FILED BY _____ D.C.

05 NOV 30  AM 11: 39

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,        )
                                 )
        Plaintiff,               )
                                 )
v.                               )     No.  03-20336 Ml
                                 )
ROBERT KIMBRELL,                 )
                                 )
        Defendant.               )

---

MEMORANDUM OPINION

---

This cause is before the Court on Defendant Robert Kimbrell's Motion to Suppress filed on June 10, 2005.  The United States responded in opposition by memorandum filed June 16, 2005, and a hearing was held on June 22 and July 1, 2005, in connection with the motion.  The Transcript was filed on August 11, 2005, and Defendant's Supplemental Brief on Motion to Suppress was filed on September 9, 2005, with the Government's response being filed on September 27, 2005.  On October 28, 2005, after review of the complete record in the case, the Court announced in open court that the Defendant's motion to suppress would be denied.

This memorandum sets out in more detail the basis for denial of Defendant's motion to suppress.

Defendant moved to suppress his arrest and any statements given by him and evidence obtained against him as a result of an asserted unlawful search and arrest on March 29, 2003.  Defendant

This document entered on the docket sheet in compliance
with Rule 55 and/or 32(b) FRCrP on  11-30-05

/11

also moved to suppress any statements and evidence obtained against him as a result of an asserted unlawful search and arrest on May 8, 2003.

On March 28, 2003, Defendant was driving an automobile on Chelsea Avenue in Memphis, Tennessee when law enforcement officers stopped him and searched the vehicle.  Defendant challenges the automobile stop, asserting that there was no traffic violation and that the Defendant had a reasonable expectation to privacy in the operation of the automobile. Furthermore, Defendant specifically challenges an alleged warrantless search of a bag found in the trunk of the vehicle on March 29, 2003.

On May 8, 2003, Defendant was again arrested, this time based on a report to the Memphis Police Department that Defendant had pointed a pistol at another man.  Defendant asserts that this stop and arrest and search was without probable cause.

Four witnesses testified at the suppress hearing: Officer Charles Teeters, a uniformed patrol officer, North Precinct; Raynard Hill, a Memphis Police Department officer at all relevant

2

times in this case;[1] Robert Earl Kimbrell, Jr., the Defendant in this case; and Irene Watt, the fiancé of the defendant.  A series of exhibits were also introduced, including composite Exhibit "3" - a series of photographs of a 1991 or 1992 white Mercury Sable, four door, with license number NCS 041 (and with heavy plastic tinting on the windows).  Exhibit "2" is a copy of the Application for Certificate of Title and Registration for the Mercury Sable dated April 1, 2003, showing that the vehicle was purchased on November 7, 2002.  This document appears to support and confirm the testimony of Officer Teeters that the vehicle being driven by Mr. Kimbrell on March 29, 2003, had an expired license tag.  Exhibit "1" is the Application for Certificate of Title and Registration for a 1985 Oldsmobile (owner Vince Levingston), license tag number KZW 257.  This license tag number was reported as the license displayed on the Mercury Sable at the time of the March 29, 2003 stop.  The fourth exhibit received was a street diagram.

Officer Teeters testified that he, along with his partner, observed the Defendant operating an 1991 Mercury Sable eastbound on Chelsea with an expired license tag.  The officers stopped the vehicle on Tommy's Garage lot at the corner of Oakwood and

---

[1]     Mr. Hill, an eight-year veteran of the Memphis Police Department, has voluntarily resigned from the department.  According to Mr. Hill, he received a letter of recommendation from the department and left "on good terms."  Tr. at 31, ll. 3-6.

3

Chelsea. As they approached the vehicle, the officers noticed an odor of burnt marijuana. Tr. at 10, ll. 4-9 (June 22, 2005). The Defendant was asked to step out of his vehicle and his driver's license was requested. The Defendant did not have a driver's license, but did have a Tennessee Identification Only Card. Tr. at 12, ll. 10-12. At that point, the officers, looking through the open door of the vehicle, saw a cellophane baggy in plain view with what appeared to be marijuana. Tr. at 12, ll. 15-23. At that point, the Defendant was escorted to the squad car, placed in the back of the car, and placed under arrest. A search of the vehicle was then conducted and a .38 caliber snub-nosed handgun with six live rounds was recovered. The search of the vehicle was both incident to the arrest and an inventory search because the vehicle was to be towed to the impoundment lot.

Former officer Raynard Hill, Sr., testified that on May 8, 2003, he was employed with the Memphis Police Department and was involved in the investigation of an aggravated assault. Tr. at 31. Specifically, Mr. Hill "received a phone call from a confidential informant that an individual had brandished a pistol and had put it to someone's head and that they were in the process of doing that as I was talking with the caller." Tr. at 31, ll. 13-16. Mr. Hill testified that the caller was someone he

4

had used as an informant in the past and that the information
supplied by him had proven reliable and had led to one or two
arrests.  Mr. Hill was in close proximity to the location of the
assault indicated by the informant (Tr. at 34).  The informant
described the incident as occurring in a vehicle that appeared to
be a white Ford Taurus.  Shortly after the description was given,
a vehicle that appeared to be that vehicle "actually made the
corner and came by my location where I was sitting at."  Tr. at
35, ll. 21-22.  Based on the information from the informant, Mr.
Hill stopped the vehicle, asked the two occupants to exit the
vehicle, checked for driver's license, and patted down the
occupants.  He then proceeded to look in the vehicle (from the
outside) and, at that time, "observed the pistol, the butt of a
pistol, under the passenger – I believe it was the passenger's
side seat.  The handle that was kind of protruding out.  We
confiscated that and subsequently we made the arrest ticket and
then transported the prisoner."  Tr. at 36, ll. 13-17.  Mr. Hill
indicated that, while they were involved in the investigation
itself, a witness appeared and identified the defendant
indicating "that's the one who did it, that's him right there . .
. ."  Tr. at 36, ll. 22-23.  Mr. Hill was a part of a two-man
team.  The other officer was Officer Chapman.  Mr. Hill further
stated that

> once Officer Chapman and I stopped the
> vehicle, it was a couple of seconds later

5

Tr. at 46, ll. 7-10.


    Mr. Hill further testified that after they made the stop

> . . . as we exited our squad car, as we
> approached their vehicle, we asked them to
> exit their vehicle.  As they exited their
> vehicle, we patted them down and searched
> them.  Of course, they weren't under arrest
> at that point, but we patted them down for
> our own safety.

Tr. at 47, ll. 18-22.


    Mr. Hill continued

> We patted them down for our own safety.  As
> we were patting them down, the individual
> walked up and says, yes, that's the one that
> did it, that guy right there.

Tr. at 48, ll. 1-3.


    The photographs in Collective Exhibit 3, were identified as

appearing to be the vehicle that was stopped on May 8, 2003.  Tr.

at 50, ll, 4-5.[2]


    Both Mr. Kimbrell[3] and his fiancé, Ms. Watts testified.

_____

[2]   Questions were raised regarding Mr. Hill's credibility.  <u>See</u> Tr. at 53, ll. 19-24.

[3]   Defendant has a substantial criminal record placing his credibility in question.  Tr. at 83-84.

However, on some major points, their testimony tended to corroborate the testimony of the officers in connection with March 29, 2003 traffic stop and the May 8, 2003 investigative stop.  For example, in connection with the investigative stop by Officer Hill, in which Officer Hill testified that he saw the butt of a gun projecting under the seat of the Mercury Sable, Mr. Kimbrell testified "I left my door wide open."  Tr. at 85, 13. Thus it is clear that the investigating officer had an opportunity to see the butt of the pistol which is asserted to have been in plain view.  While Ms. Watt did confirm that the Mercury Sable, as shown in Collective Exhibit 3, had heavily tinted windows before March 29, 2003 (Tr. at 106, 11-14) that was not inconsistent with the officers' testimony regarding their ability to see within the interior of the vehicle, since there is evidence which supports the proposition that, on both occasions, the doors of the vehicle were open, and there was some evidence that the driver's side window may have been rolled down (although this is controverted).

ANALYSIS

This case involves two distinct vehicular stops, one based on an asserted observation of a traffic violation, and a second stop based on asserted reasonable suspicion for investigative detention.

The record supports the conclusion that on March 29, 2003, Memphis police officers observed a vehicle traveling on Chelsea Avenue with an expired license tag.  Thus the officers had probable cause to believe that a traffic violation was occurring. The resulting stop, therefore, was lawful and did not violate the Fourth Amendment.  See United States v. Johnson, 424 F. 3d 707 (6th Cir. 2001).  Once the vehicle had been stopped, the evidence supports the conclusion that the officers noticed the smell of burnt marijuana and that they observed a bag of marijuana in plain view inside the vehicle.  The incriminating nature of the item in plain view was "immediately apparent" to the officers. Additionally, when asked for his Tennessee driver's license, the Defendant was unable to produce a valid license.  Thus the officers had an additional basis to arrest the Defendant.  The officers, therefore, had a sufficient grounds to search the vehicle.  Additionally, since the vehicle was to be impounded, the officers were permitted to conduct an inventory search.  The

seizure of the gun which was subsequently found on March 29, 2003, was therefore valid and the Defendant's motion to suppress in connection with that search is DENIED.

In connection with the stop on May 8, 2003 by former Officer Hill, the record supports the conclusion that the officer had reasonable suspicion that the Defendant had been or was about to be involved in criminal activity. <u>Terry v. Ohio</u>, 392 U.S. 1, 26 (1968). Officer Hill had received information from a reliable informant who reported criminal activity. Thus there was proper basis to stop the Defendant based on the officer's awareness of "specific and articulable facts which gave rise to a reasonable suspicion." <u>United States v. Garza</u>, 10 Fed. 3rd 1241, 1245 (6th Cir. 1993). The Court also must determine whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand. This assessment must be made by examining the reasonableness of the officer's conduct given his suspicions and the surrounding circumstances. Reasonable suspicion may be established by information different in quantity and content and less reliable than that necessary for probable cause. <u>Alabama v. White</u>, 496 U.S. 325, 330 (1990).

The Court must look at the totality of the circumstances including information indicating the informant's veracity, reliability, and basis of knowledge.

Here Officer Hill received information from an informant about a violent crime in progress. Almost immediately the officer observed a vehicle and driver matching the description he had been provided. Officers must, in the exercise of their duty, often make quick decisions in order to protect the public. The stop in this case was prompt and the intrusion minimal. When the Defendant and the passenger were asked to step out the vehicle, the handle of the firearm was in plain view through the open door of the vehicle. Additionally, an asserted victim appeared and immediately identified the Defendant providing the officers with probable cause to arrest the Defendant.

Defendant's motion to suppress in connection with the May 8, 2003 arrest should, therefore, be DENIED.

ENTERED this 30 day of November, 2005.

JON P. MCCALLA
UNITED STATES DISTRICT JUDGE

10

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 111 in case 2:03-CR-20336 was distributed by fax, mail, or direct printing on November 30, 2005 to the parties listed.

---

David Pritchard
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

Robert C. Irby
LAW OFFICE OF ROBERT C. IRBY
4345 E. Mallory
Memphis, TN 38111

Honorable Jon McCalla
US DISTRICT COURT